Good morning, Your Honors. Lynette Belsky, Federal Defenders of San Diego. I would like to reserve two of my minutes for rebuttal, please. Your Honors, the District Court erred in determining that Mr. Gonzalez-Reyes did not satisfy prongs 1 and 2 of 1326D. For that reason alone, this Court should reverse. Mr. Gonzalez has demonstrated that he satisfied all three prongs of 1326D, and Valdivia Flores still controls as to all three prongs. As to D1, Valdivia Flores addressed the exact form present here in Mr. Gonzalez's case, that is Form I-851. Form I-851 includes several check boxes that are options for noncitizens to check if they want to contest their removability. However, three of those four options are specifically geared towards resolving factual disputes, not legal ones. The government treats the fourth box as a catch-all option that would still allow a noncitizen to challenge the legal classification of their conviction. However, that's simply not the way that this Court has interpreted that check box, and similarly, other circuits have not interpreted the check box in that way. The Ninth Circuit, in reasoning that these check boxes were misleading and misled a noncitizen to believe that only a factual contestability would be appropriate in response to the form, the Fourth Circuit has similarly held that individuals in removal proceedings may follow the steps on the form, and those steps do not include the option to contest legal determinations. The Fifth Circuit has gone even a step further and has determined that even if the form itself were corrected, the regulations do not allow for a noncitizen to use the form in that way. Didn't the form say that he could appeal to the Ninth Circuit? That is correct, Your Honor. And if he'd appealed to this Court, what would we have done with this? It's not an appeal really from anything. I mean, there's just no fact-finding. There's just a form. What could we have done with this? Well, Your Honor, the form itself alleged that Mr. Gonzalez was an aggravated felon under his conviction for Cal Penal Code 261A2. So the form did not give him an option to say, actually, I'm not an aggravated felon. The only box concerning the conviction itself allowed him to contest that he was actually not convicted of that offense. So for a noncitizen who is convicted of that offense and wants to challenge the legal classification of their conviction, Form I-851 does not present them an option to do so. The Third Circuit recently joined the Fourth and the Fifth Circuit in determining that the form cannot be used in the way that the government in the Eleventh Circuit suggests that it can. In reviewing Form I-851, the Third Circuit determined that it satisfies multiple Ross factors. Specifically, the Third Circuit said, we are hard-pressed to think of a more opaque way to put an alien on notice that DHS intends him to raise a legal challenge in response to the notice of intent, satisfying the second Ross factor. Here, we contend that Form I-851 is both a dead end and misrepresents options available to noncitizens. With respect to D-2, Valdivia Flores has concluded that the waiver of the right to seek judicial review when it is not considered an intelligent can satisfy D-2. The District Court erroneously determined that even if there is no knowing and considered waiver, that D-2 would not be satisfied. That was error under Valdivia Flores. Okay. So is the judicial review that's contemplated by D-2, is that review by any court, including this court? Yes, Your Honor. So the reference to our court would satisfy, then, the possibility of judicial review? No, Your Honor, because the reference to this court does not correct the misleading nature of the form itself. So even though there is a reference to this court and a reference to the possibility of circuit review, that reference does not correct the misleading information found on the Form I-851. And this is because that does not provide any instruction that the conclusions of law or an aggravated felony finding classification could be appealed. Correct. Recent case law confirms Valdivia Flores' point that it is the government's burden to show that, by clear and convincing evidence, that the non-citizen received adequate advisement of the consequences of his waiver of appeal. Are we bound by Valdivia Flores on this issue? Because Valdivia Flores didn't address the language in the final administrative removal order that has additional language about judicial review. So how should we handle Valdivia Flores? We only decide cases based on whatever facts or legal arguments the parties present. It seems like in Valdivia Flores they didn't address this language in the final administrative removal order. Your Honor, yes, the language in the removal order similarly does not correct the misleading information found in Form I-851, which Valdivia Flores directly addressed. So Valdivia Flores is still on point with respect to D-2. Valdivia Flores says this form is not enough to show a knowing and intelligent waiver of judicial review. So should we look at what Valdivia Flores said and then look at what the language in the final administrative removal order does and kind of a de novo review and figure out what it means? Or do we just defer to Valdivia Flores? We defer to Valdivia Flores, Your Honor, because the logic and reasoning of Valdivia Flores was that if a non-citizen was not presented with an option to contest the classification of their conviction as an aggravated felony, then the subsequent appellate waiver is not knowing and intelligent because the non-citizen is not on notice that he is able to challenge his conviction in that way. Counsel, can you tell me how the Supreme Court's holding in Palomar, Santiago impacts our analysis? Yes, Your Honor. The Supreme Court's holding in Palomar, Santiago really did not overrule anything that's important here. Additionally, the Alfred Onbon case overruled the categorical approach analysis, which we're not relying on here. What we're looking to for Valdivia Flores is specifically the analysis and reasoning that this form I-851 had deficiencies. The government has not presented any evidence that those deficiencies were corrected for Mr. Gonzalez. In fact, just like in Valdivia Flores, the government relies on the form's text to communicate options to him. The text itself doesn't communicate those options. And Valdivia Flores is not alone in determining that. Multiple circuits, the majority of circuits who have considered this issue have determined the same. Counsel, before you have to sit down, would you please address D-3 and tell us why you've satisfied that? Yes, of course, Your Honor. D-3 is satisfied because the California Rape Statute 261A-2 is overbroad to constitute the generic definition of rape. This is because it includes sexual intercourse accomplished via economic or social coercion. When this Court looks to the definition of rape and what generic rape is, the Court... I'm sorry, I'm trying to figure out where you got the economic or social coercion. Your Honor, it's through duress. So that's not... Do those terms appear in the statute? No, duress appears in the statute. Okay, all right. Well, maybe we should talk about duress and not social coercion, because I don't know what social coercion is. But duress is a statutory term. Your concern is it's overbroad because it uses the word duress, which does not appear in the generic definition. The... Your Honor, when... Yes, it references duress, but when you look to how California courts have defined duress and what is included within that definition, social and economic coercion are two of those items. I see that I'm running out of time, but I would point the Court to Minsky and Serrano as demonstrations of California's use of the statute. It means direct or implied threat of force, violence, danger, or retribution. Retribution is the key word there, Your Honor. And you're reading retribution to mean what? Well, Your Honor, according to California case law, Minsky and Serrano, retribution would include social or economic retribution, which is why it is outside the bounds of generic rape. When this Court has considered threats, rape via threat, for example, in Vizcarra-Wilkinson, the Court determined that a threat to property exceeded the bounds, the generic definition of rape. So it would be the same here. The social economic retribution is not within the generic definition of rape. In looking at the MPC, the dictionary definition at the time that rape was added to the INA in 1996, as well as the state statutes. If we look at the dictionary definition of Black's Law Dictionary in the Sixth Edition, it's equally broad. It says act of sexual intercourse without consent when the woman's resistance is overcome by force or fear or under other prohibitive conditions. So doesn't other prohibitive conditions include duress and other similar things? No, Your Honor, that would include incapacitation. It doesn't use those words, prohibitive conditions. It's a pretty broad term. Correct, but in the statutes that address this, so if we look again largely to the MPC and the state statutes that actually defined rape at the time that Congress added it to the INA, it would be that rape could only be accomplished three ways. So one, through physical force, two, through threat of physical force or physical harm, and three, under incapacitation or other prohibitive conditions. How should we balance this? We look at what the definition was at the time Congress passed the statute here. It's 1996, the immigration statute. The Black's Dictionary that I quote is 1990. MPC, I know they cite it, but MPC is from the 1960s and it is a bit more narrow. I mean, how do we balance this? Shouldn't we look at the more recent definition? What do we do when there's a little bit of a conflict there? Your Honor, I don't think we look at the most recent definition. This Court looked at the 6th edition in Castro Bias. The definition that we should look to is the definition that was in place at the time that Congress added this very specific term of rape to the INA. Now, with respect to minors, Congress said sexual abuse of a minor. So it intended it to be more vague and broad to cover a wider scope of conduct. But rape is a very specific term and it was very specific at the time that it was added to the INA. The majority of states and the dictionary and the MPC do not include this social economic retribution component. While I can appreciate that California has progressed and has added these other ways of committing crimes to the statute, it's not rape. It's gross sexual imposition. It's something else, but it's not rape. I do have one follow-up question. I know you're over time, but please indulge me here. I'm a little bit perplexed, I guess. Explain to me how the definition of rape by duress fits outside the federal generic definition given that rape by its very nature is physical, right? The penetration is a physical violation of someone's body. So how is it that if you accomplish that part of it, the fact that what got you there was duress and maybe not holding someone down, how does that fall out of the federal generic definition? Yes, Your Honor. So the short answer to that is that when Congress added rape to the INA in 1996, there were very specific ways to commit rape. One of them was through force, one of them was through threat of force, and then incapacitation. So to the point where a victim could not consent for whatever reason. When we're talking about the California statute and we're talking about duress, California allows for sexual intercourse accomplished via social or economic coercion to be classified as rape and bundled into the same rape by force. So it's not, sure, it's not someone, you know, being held down, but it's a coercive social or economic way of... But it's still coercion. Yes, it is coercion. And it's still physical, given the penetration. That's where I'm... Well, sure, but it's not physical harm in the same way that physical force is, Your Honor. That's not the way that physical force was thought about at the time that Congress added this term to the INA. And I would also point this Court to Valdez-Amedore v. Garland, which is a different section of the California rape statute. It's 261A4, 261A14, no, A4, sorry. And in that case, this Court considered a different section of California rape statute. It was rape by fraud, and the Court determined that it owed the BIA deference to determine whether that specific section of the statute fell within the generic definition of rape. So it remanded back to the BIA. I think that that section is much closer to the section we're discussing today than the section in Castro-Baez. Fraud is completely different. That is that somebody has been, has misrepresented themselves. There may be a lie there, but there may not be any kind of coercion in the sense that California requires it here. There is a lie here, Your Honor. If you look at the cases from California, it involves, specifically Minsky, it involves him duping. That's the word that the Court uses. It involves him duping women into believing that if they don't engage in sexual intercourse with them, you know, he's going to press charges for a hit and run. So it is a lie. It's a misrepresentation. Sure, but that's not fraud in the way that says you shouldn't have sex with me because I'll take care of you because I'm a billionaire. That's a very, that's a very different kind of fraud. Well, I respect the Court's opinion on that. I think that it's much different than, for example, Castro-Baez, where this Court considered a different section of the California rape statute that said, you know, rape via, it addressed incapacitation. I think that our issue is very narrow here. We're not saying that rape requires force, we're not saying that rape requires a threat of force. What we are saying is that when rape can be accomplished via threat, it must be a threat of physical force or physical harm. And this Court, similarly, when considering the threat to property, rape via threat to property, decided that that was not sufficient. That's outside the generic bounds of rape. Great, thank you, Anna. We've taken you well over time. We'll get an extra minute for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Andrew Chang for the United States. This Court has multiple pathways to affirming the District Court's order, and I wanted to start with where we picked off, which is the federal generic definition of rape. The defendant claims that he was misclassified as an aggravated felon because his California statute of conviction swept more broadly than the federal generic definition. And from what I understood from the briefs, they defined federal rape as more limited, requiring some sort of forcible compulsion, like violence or the threat of violence. But this Court has already addressed and rejected that argument in prior precedent. In Yanis Sacedo, which we discussed in page 33 of our brief, this Court held that forcible compulsion is, can, but is not required. In the commission of rape, and that case dealt with a very similar statute as the one here, which was third-degree rape under Washington law. That statute criminalized non-consensual sexual intercourse without forcible compulsion or without the threat of violence or the use of violence. And it found that that statute was a categorical match with the federal generic definition of rape. I don't see any reason why this Court should find a different outcome with the statute at issue here. It's a very similar statute. The statute here, the provision that we're talking about is non-consensual sexual intercourse under duress. And the defense is saying, well, you know, the federal generic definition requires some sort of forcible compulsion. This Court has already decided that it doesn't need to have that in the federal generic definition. What do we do? I'm still a little concerned. I mean, California does use the word duress, which starts off in the definition as direct or implied threat of force, violence, danger. Now, then it says, or retribution, and opposing counsel says, yes, and California has accepted that retribution may mean something that would be far less than force, violence, danger. Those three terms seem to be very, very consistent with the overall generic definition. But if retribution concerns, you know, some kind of economic, you know, do this or, you know, I'll take your property away. You know, I'll foreclose on your house. Would that satisfy the generic federal definition? Yes, it would. Our position is that it would, because the federal generic definition is broad enough to cover that type of coercion. If indeed California would apply the statute in that way. Again, the statute in Washington, third degree rape, did not require forcible compulsion. It just required lack of consent and then an expression of non-consent. So that would, and, you know, I think that was very similar to the statute at issue here. If it could, if the statute at issue here could mean some sort of economic or social retribution, the federal generic definition would cover it. So the defendant was an aggravated felon. The defendant was properly removed under expedited procedures. But even if this court does not want to engage in the categorical analysis with respect to this California statute, it could still find that the defendant did not meet any of the three prongs of 1326D. And I just want to start first with, you know, the third prong, which is fundamental unfairness. The defendant can't show that even if his removal was, had a legal deficiency, that his removal was fundamentally unfair. And the reason is that it's indisputed that the defendant here had no lawful status in the United States. It's indisputed that the defendant here had no plausible path to obtaining relief from removal. And that's important. The longstanding rule in the Ninth Circuit, as recognized in Valdes-Navoa, is that to show prejudice, you have to be able to demonstrate some plausible avenue for relief from removal. And the defendant can't show that in this case because the defendant, one, again, had no lawful status in the United States, came to the United States unlawfully when he was an adult, and then spent the majority of his life, adult life, in the United States in prison for committing, you know, one of the most horrific crimes that one can think of. There was no plausible avenue to obtaining relief from removal in this case. And Valdivia Flores really didn't alter that rule. And I want to kind of talk about that a little bit because, yes, Valdivia Flores did say that the defendant was prejudiced because he was misclassified as an aggravated felon. But there was no analysis about, well, was that person actually prejudiced? It wasn't presented to the court in briefing. No part of that opinion considered, you know, the question of actual prejudice. And I would just submit that that does not constitute controlling binding precedent. To make such a sharp left turn from longstanding Ninth Circuit precedent and have no comment whatsoever on, well, you know, the rule in Valdes-Novoa, you know, was the person actually prejudiced? I would submit that that does not constitute precedent that this court needs to follow and this court does not have to allow precedent to develop in that way in the Ninth Circuit. So that goes to D3. And even if, you know, Valdivia Flores did create binding precedent with respect to prejudice, I would just say one more thing, that Palomar Santiago made it very clear that each of the three prongs have to be satisfied. And if Valdivia Flores presumed prejudice with respect to D3, that's just another way of excusing the need to demonstrate actual prejudice. And Palomar Santiago has made it very clear the excusal doctrines in the Ninth Circuit can no longer function. So what does Form I-851, how does this help us? I have to say I find the form myself very confusing. I've been doing this for a while. And I read this and I don't really understand what it's supposed to do. There's no IJ that's been involved. There's no BIA determination. There's no district court that's been involved. What would we do with this? If he had filed this and says, yeah, okay, I'll appeal. Not only that, I'm going to get it in within 14 days to make sure you don't boot me from the country in the meantime. What would we have done with this? It's a petition of what? I don't even know what this is. Okay. Let me try to address your question, Judge Bybee. The reason I'm asking is I'm just not sure that there really was judicial review here if there's really sort of nothing that we recognize. I'm not aware of any appeal I've ever seen that was an appeal from an I-851 order. So I just don't know what this looks like. So I just don't understand what there was realistically that would have given him judicial review here. Oh, I think there's no question that the defendant had the opportunity to appeal to this court. And I understand that the form may not be a model of clarity. And I know the defense has talked about those four boxes and that they're potentially confusing. And I also recognize that there's a circuit split on what those four boxes mean. But I think the point that I really want to drive home to the court is that those four boxes were confined to the defendant's administrative remedies. And that only has to do with 1326 D-1. 1326 D-2 has to do with his deprivation of judicial review. And there's nothing in the form that deprived him of his opportunity to take an appeal to this court. I mean, even if those four boxes were somewhat confusing, the form makes it very clear those four boxes were on the form that needs to be sent to the DHS. And sending stuff to the DHS is administrative review. It's administrative remedies. That's not the same thing as him taking an appeal to this court, the Ninth Circuit. And the form gave him no restrictions on his ability to appeal to this Ninth Circuit. And to your question, Judge Breybien, what would this court have done? I think if the defendant took an appeal to the Ninth Circuit and said, hey, you know, I think they got it wrong. Rape is not an aggravated felony. This court would then review that in a petition, in a direct petition for review. Was the defendant an aggravated felon? And we would ask for briefing in a case in which there had been no prior briefing. I can't think of another matter in which we would initiate briefing in that way when there is no underlying decision by an administrative agency or a district court. Well, I, you know, I think I would disagree with that. And I would point the court to the Tenth Circuit case in Belotta Zarate v. Sessions. And pardon me, I didn't cite this in my brief, so I'm going to cite it now. 892 F. 3rd 1137 from the Tenth Circuit. And that was a petition for review, direct petition for review from a direct finding by DHS that the defendant was not an aggravated felon. And so the defendant did have that opportunity, if he wanted, to make an appeal to the Ninth Circuit about the DHS's legal conclusion that he was an aggravated felon. And, you know, Congress required the defendant to at least attempt to make this showing before he can meet the prongs of 1326 D because you want defendants to appeal in the first instance and not, you know, appeal later on a collateral basis after they've, you know, been deported, come back to the United States once again and then take up the issue. I mean, that's collateral review and Congress has, you know, has instituted some barriers to that. So to your point, Judge Breybe, I think he did have that opportunity to directly appeal to this court. And, you know, I'm running out of time, but I want to make one final point that, you know, Valdivia Flores did not foreclose his need or didn't excuse his need to show that he was deprived of judicial review. The most that Valdivia Flores did was to show that the waiver in that case was invalid. But showing that the waiver is invalid is not the same thing as showing that you were deprived of judicial review. What Valdivia Flores ruled was that the waiver in that case was invalid because he wasn't specifically told that he could appeal legal conclusions to the Ninth Circuit. But, you know, I don't think that's what deprivation of judicial review really means. I mean, the deprivation of judicial review inquiry doesn't require the government to advise the defendant of every conceivable basis in which he can appeal a finding. I think that's somewhat absurd and, you know, I don't think it's workable and it would stretch the word deprived beyond what it could really bear. All the government needed to do was to tell him, hey, you can appeal. And the government did that in this case. It told him you can appeal this decision and that this decision contained conclusions of law that included that he was an arrogant felon and the defendant chose not to appeal. So he can't satisfy 132062. Thank you. Your Honors, I'll be brief. I want to just begin by addressing Yanez and Castro-Baez. The government repeatedly said that we're dealing with a similar statute here. We are not dealing with a similar statute. If the court looks to the statute directly at issue in Yanez, it's actually a statute of incapacitation. That's not what we're dealing with here. That's a different section of California rape statute. Castro-Baez did deal with an incapacitation portion of California rape statute. So that is not the same thing. And more importantly, our argument is not inconsistent with either of those findings. Our argument touches on something entirely different than what those cases say. And that is whether a threat of social or economic coercion is within the generic definition of rape. The second thing I would just like to mention is the government has a lot of opinions about the judicial advisal and the ability to appeal. But I think that the government ignores the empirical reality of these cases. And I think the Third Circuit does a very good job of explaining what actually plausibly happens in these situations when a defendant or non-citizen tries to appeal the classification of their conviction as an aggravated felony. And we do discuss this extensively in our reply on page 7. There are multiple cases where the non-citizen checked the box indicating, I wish to contest and or request withholding of removal. And then the BIA could not reach any decision because they determined they did not have authority to determine that question. So this further demonstrates that not only was the form misleading and had deficiencies, those deficiencies impaired him from making a knowing and intelligent waiver of his right to judicial review and as a result, Mr. Gonzalez was removed for being an aggravated felon when he was not one. Thank you. Thank you both for the helpful argument. The case is submitted.
judges: BYBEE, LEE, ALBA